AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: __EMJ 2/04/2025__

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

the 32 GB micro-SD card, the 8 GB micro-SD card, and the black, smart tablet or cell phone found in the 2017 Hyundai Santa Fe registered to RONNIE ALLEN BARTON

)
)
)
)
)
)

Case No. MJ-25-87-CMS

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, which is attached and incorporated by reference herein.

located in the __Western__ District of __Oklahoma__ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. s. 2422(b) | Attempted Coercion and Enticement of a Minor |
| 18 U.S.C. s. 2252A(a)(2) and (b)(1) | Attempted Receipt of Child Pornography |

The application is based on these facts:

See the attached Affidavit of FBI Special Agent David Garrison, which is incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

David Garrison, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __February 4, 2025__

_____
*Judge's signature*

City and state: __Oklahoma City, Oklahoma__

CHRIS M. STEPHENS, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, David Garrison, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.    I have been employed as a Special Agent of the Federal Bureau of Investigation ("FBI") since June of 2005 and have been assigned to the Oklahoma City FBI Field Office since January of 2013. During that time, I have conducted a wide variety of investigations, including cases involving child pornography and sexual exploitation of children.

2.    As this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included every fact known to me concerning this investigation. The facts of this Affidavit will show that, between July 26, 2024 and January 24, 2025, RONNIE ALLEN BARTON ("BARTON"), who is the registered owner and driver of an orange 2017 Hyundai Sante Fe with Oklahoma license plate MQB168 and Vehicle Identification Number ("VIN") 5XYZTDLB6HG443407 (the "SUBJECT VEHICLE"), committed the crimes of attempted coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b), and attempted receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1).

3.    Further, during the execution of a search warrant on the SUBJECT VEHICLE, investigators found digital devices, including: a 32 GB micro-SD card ("DEVICE 1"), an 8 GB micro-SD card ("DEVICE 2"), and a black, smart tablet or cell phone ("DEVICE 3"). Based on my training and experience, the characteristics of individuals engaged in the sexual exploitation of children, and the nature of the criminal

violations BARTON is alleged to have committed, I am submitting this affidavit for the purpose of executing a search warrant on the listed devices for the purpose of identifying evidence as it pertains to BARTON's violations of attempted coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b), and attempted receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1).

### PROBABLE CAUSE

4.      On July 26, 2024, Online Covert Employee 6862 ("OCE") posted the following on the website Doublelist:[1]  "Finding myself more and more interested in watching others spend time with and enjoy my 'littles.'  Open-minded with no limits."  On July 26, 2024, BARTON, utilizing the username, "morelka," engaged in a Doublelist direct message chat conversation with the OCE.  The conversation is summarized below.

5.      On August 28, 2024, Doublelist returned administrative subpoena information for the subscriber "morelka."   Contained within the returns were posts "morelka" had made on Doublelist from February to July of 2024.  The "verified user phone number" associated with the posts and the Doublelist account was listed as 405-777-9952.[2]  Open-source research into the phone number 405-777-9952 showed the number

---

[1] Doublelist is an online website based in San Francisco, California.  Its home page states that it is where people can "[c]onnect with straight, gay, bi and curios!"  Its mission statement reads, "[t]o be a SAFE community where you can learn, explore and enhance your sexual side."

[2] On the Doublelist FAQ page, in response to a question regarding the verification of phone numbers, the response states, "[w]e may occasionally ask you to verify your account with a phone number.  We only allow real cellular number and landlines to be used for phone verifications.  Please allow up to 5 minutes for the code to arrive."

belonging to BARTON beginning in February of 2019. Additionally, as of July 31, 2024, the Oklahoma Department of Corrections Sex Offender Registration listed BARTON's telephone number as 405-777-9952. On October 16, 2024, in response to a subpoena request for subscriber information from August 11 to September 11, 2024, Verizon returned results for the subscriber of 405-777-9952, which confirmed the information was listed under BARTON's name.

6.      Open-source research revealed BARTON having a vehicle with an Oklahoma license plate matching the SUBJECT VEHICLE. In August of 2024, in response to an Oklahoma Motor Vehicle Registration query, the SUBJECT VEHICLE was shown to be registered in BARTON's name.

7.      On July 26, 2024, BARTON began the direct message chat conversation with the OCE by stating, "48 ddf swm here with 7c. I'd like to know more about your 'littles.'"[3] The OCE responded, "Hey. Sure. Have access to a 9 yr old step-daughter and 11 yr old niece." BARTON asked for an address, to which the OCE replied, "I set em up at motels." BARTON replied, "The hotel next to the ta truck stop on council would be great if you could." After asking for and being denied pictures of the OCE's "girls," BARTON asked, "Can you at least describe them some and what can and can't be done to them?"

---

[3] On dating websites and personal ads, "ddf" and "swm" typically mean "drug disease free," and "straight white man," respectively. Additionally, "7c" is a descriptor for the user's penis size.

8.     After the OCE replied with physical descriptions of the "girls" and descriptions of what they generally do with the men they meet up with, BARTON asked, "Either of them suck?" Soon after, BARTON chatted, "Can't wait to see them" and asked, "condoms required?" BARTON also asked, "What's the biggest they have had in them?"[4] BARTON later added, "Well, I was hoping this was for tonight or tomorrow, but I'll definitely be waiting."

9.     On July 30, 2024, after a further chat discussion about meeting up for the purpose of BARTON engaging in sexual activity with the OCE's "girls," BARTON chatted, "Well, weekends are best for me." After the OCE asked BARTON what the "girls" could expect from him, BARTON replied, "I really need a good blow, other than that, I'm open." The OCE indicated he would find out from his "ex-wife" when he would be granted access to the "girls" again.

10.     On August 13, 2024, BARTON sent the OCE a chat asking, "How are things" and told the OCE how he needed "female help." BARTON went on to chat, "Seems like everyone here is fake." The OCE replied, "Getting harder and harder to fins someone who shares y same 'interests,' if you know what I mean." BARTON replied, "I never heard anything back from you about it." The OCE replied, "Lost access to the girls for a bit. Should be able to have them with me again in a couple of weeks."

---

[4] Typically, when users ask this question on a sexual or dating themed website or private messenger application, they are asking about the biggest sized penis that has been inserted into a female's vagina.

11.     On August 26, 2024, BARTON reached out to the OCE and chatted, "so when are you available?"  The OCE replied, "I can have em [the "girls"] starting the 12th and 13th of next month."  BARTON replied, "Friday evenings are my only free time." BARTON went onto describe how he "would love mff.[5]  I also feel I should make it enjoyable for them, so I'm trying to find out what they like best or if there is something they want to try.  Or if there is something particular you want to see done."  BARTON went on to ask, "How do they taste" and then added, "Can't wait."  BARTON also asked, "Have they tried anal" and added, "I'd love to start out watching them play with each other and double bj."[6]  BARTON added, "Would love having my balls licked and sucked while I'm inside something tight" and "I really want to see them naked."

12.     On September 9, 2024, and September 15, 2024, BARTON reached out to the OCE again on Doublelist.  BARTON asked, "How have things been going?" and "How's it going?"  Between those dates and September 27, 2024, BARTON and the OCE exchanged chats about the weather and family.  After that, BARTON informed the OCE in a chat, "Let me know when you're ready to play."  The OCE responded by letting BARTON know his "access to the girls" was limited to Thursdays and Fridays.  BARTON responded with, "Friday evenings are best for me."  The OCE replied, "Wasn't sure if you were still interested.  BARTON replied, "Yeah."

---

[5] In text or chatting language, "mff" means "male, female, female."

[6] In chatting or texting language, "bj" typically means "blowjob."

13.    BARTON next suggested a date to meet of October 11, 2024, since he got off work early that day. The OCE informed BARTON that he could not do that day because he had plans for that weekend that could not be changed. BARTON replied "np, I was just thinking that I'll have to grab a shower after work before I meet." He added a chat a few minutes later, "Unless they'd wanna shower with me in the motel…Lol." On October 18, 2024, BARTON sent the OCE a chat reiterating that he was free Fridays after 5 p.m.

14.    On November 8, 2024, BARTON reached out to the OCE again on Doublelist, asking "What's up." On November 12, 2024, BARTON stated, "I wanna hear about the fun you and the girls have been having." Later that day, he added, "Since I haven't had the chance, I wanna hear about it." After the OCE responded with, "Nothing to tell, honestly." BARTON responded the next day with, "Available Friday?" After the OCE replied with, "What did you have in mind?" BARTON replied with, "Wanting to play." The OCE replied, "The girls are ready." BARTON replied, "Just let me know when and where."

15.    On November 19, 2024, the OCE, utilizing Doublelist, suggested to BARTON to meet up with the juvenile females on the evening of Friday, November 22, 2024. BARTON replied, "Sounds good." On December 5, 2024, after the proposed meet with BARTON did not occur, BARTON reached out to the OCE on Doublelist with the message, "Guess it was a no go. Well, just let me know." On December 11, 2024, the OCE replied, "Hey man, sorry, thought it was a no go on your end." On December 18, 2024, BARTON replied to the OCE, "No, any Friday evening is good for me, I was waiting for you to confirm and tell me time and place."

6

16.     On January 8, 2025, BARTON, utilizing Doublelist, reached out to the OCE again and chatted, "Just let me know." On January 15, 2025, BARTON and the OCE engaged in a series of chats. The OCE stated, "Hey man, the girls and I are free Friday the 24th, what time works for you?" BARTON replied, "Anytime after 5pm." BARTON also chatted, "Please send me some pics." The OCE replied, "Does 6pm work?" BARTON replied, "Perfect," and then added, "I know you don't like to send them but I'd really like to see nude pics."

17.     Further investigative activities revealed BARTON's employment at Exiss Trailers located in El Reno, Oklahoma. During physical surveillance near BARTON's employment, on January 16, 2025, I observed the SUBJECT VEHICLE being driven by BARTON.

18.     On January 17, 2025, utilizing Doublelist, the OCE and BARTON engaged in a series of chats. The OCE replied to BARTON, "I know man, you know we're into the real thing," and then added, "where do you want to meet?" BARTON replied, "Wherever in OKC is convenient for you, I'm not picky." The OCE replied, "Cool, I'll let you know." BARTON then responded, "Ok, main reason I asked about pics this time is cause cops can't send those kind of pics and I was just trying for my safety." On January 18, 2025, the OCE, utilizing Doublelist, replied to BARTON, "Yeah, I get it. But it's for the girls safety and mine. I've been burned to much. Sorry man, if this isn't going to work, that's cool." Later the same day, BARTON replied, "I'm ready, I was just trying to make sure."

19.     Through additional chats, BARTON and the OCE set up to meet at the Comfort Inn and Suites near Interstate 40 and Meridian Avenue in Oklahoma City,

Oklahoma, on Friday, January 24, 2025 at 6:00 p.m. On the day of the scheduled meet, BARTON and the OCE engaged in a series of chats. The OCE stated, "I'll be picking up the girls later today. Looking forward to it." BARTON replied, "Ok." BARTON continued, "Let me know when you get your room. I won't have internet after I head that way."

20.   After the OCE notified BARTON that he successfully checked into the motel, BARTON replied, "Ok, I'm still kinda nervous about cops but I'm ready. Is there a way to prove it's safe, like I don't know, walk around with them so I can see that they are there?" The OCE replied, "I'm nervous too. I'm not comfortable with that. The girls and I are excited, we'll be here." Around the time of these chat exchanges, physical surveillance observed BARTON, driving the SUBJECT VEHICLE, enter the motel parking lot and park his vehicle. Shortly thereafter, BARTON was arrested at the motel after exiting his vehicle near a side door entrance.

21.   Following his arrest, BARTON, after waiving his *Miranda* rights and signing a *Miranda* waiver, gave a voluntary interview. During the course of the interview, BARTON admitted to utilizing the username "morelka" when engaging in online activities. He further stated that his phone number was 405-777-9952 and had been for a number of years. He further stated that he had not traveled outside the state of Oklahoma for a number of years.[7]

---

[7] He added the only time he had even left the Union City-El Reno-OKC area, within the last few years, was to travel to Guthrie, Oklahoma for family matters.

22.     After further questioning, BARTON admitted to having an account with Doublelist and, specifically, to engaging with an individual on that site who advertised his "littles." BARTON stated that he learned and believed these "littles" were actual juvenile females, whom the Doublelist individual was "making available" for sexual purposes. BARTON further admitted to continuing his online engagement with this individual for a number of months and, at one point, asking for "inappropriate pictures" of the OCE's girls. BARTON was asked to clarify what he meant and he explained how police were not allowed to send "pornographic" pictures. When asked if that was what he asked the OCE to send, BARTON replied, "Probably. I think so. I can't remember exactly." BARTON further admitted to agreeing to meet with the Doublelist individual and to knowing he would have the juvenile females with him. Throughout the course of this entire interview, BARTON denied many of the facts with which he was confronted; however, ultimately, BARTON admitted the facts as stated in these Paragraphs.

## CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

23.     The following indicates characteristics of child pornography collectors that this Affiant has learned through training, working multiple investigations involving child pornography, and from other law enforcement officers with a background in child pornography investigations:

a.     The majority of individuals who collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

9

b.     The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children.

c.     The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, P2P, e-mail, e-mail groups, bulletin boards, IRC, newsgroups, instant messaging, and other similar vehicles.

d.     The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings, and finding comfort for their illicit behavior and desires. Such individuals rarely destroy these materials because of the psychological support they provide.

e.     The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone

numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

      f.    The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials. These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, to enable the individual to view the child pornography images, which are valued highly.

## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY

24.    Based on my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers, computer technology, and the Internet have revolutionized the manner in which child pornography is produced and distributed.

25.    Computers basically serve four functions in connection with child pornography: production, communication, distribution, and storage.

26.     Child pornographers can transpose photographic images from a camera into a computer-readable format with a scanner. With digital cameras, the images can be transferred directly onto a computer. A modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Through the Internet, electronic contact can be made to millions of computers around the world.

27.     The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution.

28.     The Internet affords collectors of child pornography several different venues for obtaining, viewing and trading child pornography in a relatively secure and anonymous fashion.

29.     Collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Hotmail, among others. These online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in a variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

12

30.     As with most digital technology, communications made from a computer are often saved or stored on that computer.  Storing this information can be intentional, for example, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in "bookmarked" files.  Digital information can also be retained unintentionally.  Traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others.  In addition to electronic communications, a computer user's Internet activities generally leave traces in a computer's web cache and Internet history files.  A forensic examiner often can recover evidence that shows whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files that were uploaded or downloaded.  Such information is often maintained indefinitely until overwritten by other data.  Likewise, devices such as cellular telephones, tablets, and e-readers are also capable of electronic storage as computers.

**CONCLUSION**

31.     Based on the above-stated facts, I believe there is probable cause to believe that BARTON committed the crimes of attempted coercion and enticement, in violation of 18 U.S.C. § 2422(b), and attempted receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1).  Specifically, I believe BARTON utilized and operated the SUBJECT VEHICLE to commit the crime of attempted coercion and enticement.  Accordingly, because they were found in the SUBJECT VEHICLE, there is probable cause to believe that evidence of that criminal offense may be located in **DEVICE 1**, **DEVICE 2**, and **DEVICE 3**, and this evidence, listed in Attachment B to this Affidavit, incorporated

13

herein by reference, is contraband, the fruits of crime, or things otherwise possessed, or property which is or has been used as the means of committing the foregoing offenses. As described in the probable cause section, there is probable cause to believe RONNIE ALLEN BARTON violated the aforementioned statutes. I, therefore, respectfully request the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for this Court to authorize the execution of the warrant at any time in the day or night.

Respectfully submitted,

David Garrison
Special Agent
FBI


Subscribed and sworn to before me on February ___4___, 2025.


CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

**DESCRIPTION OF THE DEVICES**

1.      The  32  GB  micro-SD  card  found  inside  the  SUBJECT  VEHICLE
("**DEVICE  1**"),  specifically,  within  the  front  dashboard  recess.   It  is  currently  in  the
custody  of  the  FBI  Oklahoma  City  Field  Office.   A  picture  is  attached  below.



15

2.    The 8 GB micro-SD card found inside the SUBJECT VEHICLE ("**DEVICE 2**"), specifically, within the rearview mirror camera cover.  It is currently in the custody of the FBI Oklahoma City Field Office.  A picture is attached below.



3. The black, smart tablet or cell phone found inside the SUBJECT VEHICLE ("**DEVICE 3**"), specifically, within the pouch behind the front passenger seat. It is currently in the custody of the FBI Oklahoma City Field Office. A picture is attached below.



## **ATTACHMENT B**

## **LIST OF ITEMS TO BE SEIZED**

Contraband, evidence, fruits, and instrumentalities related to BARTON committing the crimes of attempted coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b), and attempted receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1), in any form, including, but not limited to:

1.      Computer(s), as broadly defined in 18 U.S.C. § 1030(e), other digital file storage devices, computer hardware, computer software, computer related documentation, computer passwords and data security devices, videotapes, video recording devices, video recording players, and video display monitors that may be, or are used to: visually depict child pornography or child erotica; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography, child erotica, or information pertaining to an interest in child pornography.

2.      Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

3.      Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, distribution or accessing with the intent to view (or the attempt to do so) child pornography as defined in 18 U.S.C. § 2256(8) or to the possession, receipt, or distribution of visual

depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

4.      In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

5.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

6.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

7.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning communications

19

between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to whose with an interest in child pornography.

8.    Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

9.    Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

10.    Any and all visual depictions of minors engaging in sexually explicit conduct.

11.    Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography as defined in 18 U.S.C.

§ 2256(8) or any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).